UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DOYLE D. JORDAN, | ) | Civil No.07cv466-J(NLS) |
| | ) | |
| Petitioner, | ) | **REPORT & RECOMMENDATION OF** |
| v. | ) | **U.S. MAGISTRATE JUDGE RE:** |
| | ) | **PETITION FOR WRIT OF HABEAS** |
| WARDEN EVANS, Warden, | ) | **CORPUS** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Doyle D. Jordan ("Petitioner") is a California prisoner serving a term of twenty-five years for robbery, assault with a firearm, and burglary. He has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, raising two claims for relief [Doc. No. 1]. Respondent filed an Answer to the Petition and lodged documents in support [Doc. No. 5], arguing that Petitioner's claims are without merit. Petitioner did not file a traverse. After a thorough review, the Court finds that Petitioner is not entitled to the relief requested and **RECOMMENDS** that the Petition be **DENIED**.

## BACKGROUND

The following statement of facts is taken from the appellate court opinion denying Petitioner's habeas petition. This Court gives deference to state court findings of fact. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

/ / /

/ / /

> "On December 16, 2002, a man later identified as [Petitioner] entered a shoe store in Rancho San Diego wearing a green trench coat and carrying a shotgun. The man approached the manager, cocked the shotgun, causing a shell to fall to the floor, and demanded money. After taking $153 from the manager, the man left the store in a white truck with out-of-state plates. The next day, the San Diego County Sheriff's Department recovered a stolen white GMC Sierra Truck with out-of-state plates in front of a residence in Lemon Grove. The Sierra contained a green trench coat, a shotgun and shells of the same color and type found in the shoe store. Deputies arrested [Petitioner] in a motor home parked in the driveway of the same residence.
>
> The shoe store manager believed the man who robbed the store had a lightening bolt or flame tattoo on his neck and a starburst or compass tattoo on his left hand. [Petitioner] does not have a tattoo on his neck but does have a tattoo with points on his left hand. The manager failed to identify [Petitioner] in a pretrial photographic lineup. A customer present in the store at the time of the robbery identified [Petitioner] as the man who committed the robbery in a pretrial photographic lineup. Both the manager and the customer identified [Petitioner] at trial.
>
> When shown photographs of the Sierra seized in front of the home where [Petitioner] was staying, the manager identified the truck as the "very same" truck involved in the robbery. The customer identified the truck as a similar truck but not the same truck. The customer was certain the truck involved in the robbery was a Ford F-150. Both the manager and the customer described the truck involved in the robbery as having out-of-state plates."

[*Lodgment No. 6*, *People v. Jordan*, No. D042720, slip op. at 2-3 (Cal.Ct.App. June 25, 2004).]

On April 8, 2003, a jury found Petitioner guilty of robbery, in violation of California Penal Code ("CPC") section 211; use of a firearm, a shotgun, during the commission of the robbery, in violation of CPC sections 12022.53(B) and 12022.5(A)(1); assault with a firearm in violation of CPC section 245(A)(2); burglary in the second degree in violation of CPC 459; use of a firearm, a shotgun, during the commission of the burglary, in violation of CPC section 12022.5(A)(1); unlawful taking or driving of a vehicle in violation of California Vehicle Code section VC 10851(A); and possession of a firearm by a felon in violation of CPC 12021(A)(1). [*Lodgment No. 2*, 662-64.] Petitioner waived his right to a bench trial on his criminal history allegations, and admitted that a 1996 bank robbery was a "serious felony" prior and a "strike prior" under California law. [*Id*. at 673.] On June 25, 2003, Petitioner was sentenced to a total term of twenty-five years incarceration. [*Id*. at 907.]

Petitioner appealed the robbery, burglary, and assault convictions, raising the single claim that the convictions violated his due process rights because they were based on insufficient evidence. [*Lodgment No. 3*, 9.] The appellate court rejected this claim, finding that the jury's factual determinations were supported by substantial evidence, and affirmed Petitioner's conviction and sentence. [*See Lodgment No. 6*.] Petitioner then requested a rehearing for the appellate court to

consider whether Petitioner's upper term sentence was unconstitutional under the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 961 (2004). [*See Lodgment No. 7*.] The appellate court granted the request, and ordered briefing on the single issue of whether the *Blakely* decision had any impact on Petitioner's sentence. [*See Lodgment No. 8*.] Petitioner's conviction and sentence were eventually affirmed in full by the appellate court. [*Lodgment No. 17*, 9.] The California Supreme Court denied Petitioner's final Petition for Review on January 18, 2006. [*See Lodgment No. 19*.]

Following the denial of his state petitions, Petitioner filed this federal Petition on March 12, 2007, raising two claims: (1) violation of his due process rights at trial due to the insufficiency of the evidence to sustain his robbery, burglary, and assault with a firearm convictions, and (2) the trial court erred in imposing an upper term sentence for his robbery conviction by finding aggravating factors to be true without a jury trial in violation of his due process and confrontation rights. [*Petition*, 6-7.] Respondent has answered the Petition, and argues that the California Court of Appeal reasonably rejected Petitioner's insufficiency of the evidence claim. [*Answer*, 6.] With respect to Petitioner's second claim, Respondent contends the claim should be denied because granting relief would violate the Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288 (1989), which prohibits the retroactive application on federal habeas review of a new rule of constitutional law, and in the alternative, that the claim is unexhausted. [*Id*. at 7.]

## DISCUSSION

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the

"unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the state court's factual determinations are presumed correct, and the petitioner carries the burden of rebutting this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1) Claim One: Insufficiency of the Evidence

Petitioner contends that the eyewitness testimonial evidence presented at trial was constitutionally insufficient to support his convictions. [*Supplement Memorandum Attached to Petition for Habeas Corpus ("Petitioner's Memorandum")*, 1.] Petitioner claims that the two witnesses to the robbery, the store manager and a store customer, each gave detailed descriptions of his physical features and the "getaway" truck that conclusively excluded Petitioner as the possible perpetrator. [*Id.*] Petitioner argues that the store manager, the individual who had the closest contact with the robber and handed over the store's cash, testified that the robber had a tattoo on his neck. Petitioner does not have a tattoo on his neck. [*Id.*] The store manager also failed to identify Petitioner out of the initial photographic lineup, and could not positively identify Petitioner as the robber until he saw him in court. [*Id.* at 2.] Petitioner argues that although the store customer correctly identified him in an initial photographic lineup, because he incorrectly described the truck used by the robber as a Ford F-150 (the truck used in the robbery was a GMC) his testimony was unreliable and his identification inherently improbable. [*Id.* at 2-3.] Based on these discrepancies, Petitioner argues that their testimony constituted insufficient evidence to support the jury's verdicts finding him guilty of robbery, burglary, and assault with a firearm.

Petitioner raised this claim on direct appeal. [*See Lodgment No. 6*; *Lodgment No. 17*.] The California Court of Appeal rejected Petitioner's argument,[1] and concluded that neither the store manager's nor the store customer's testimony was inherently improbable. [*Lodgment No. 6*, 4; *Lodgment No. 17*, 5-6.] Specifically, the appellate court noted:

---

[1] Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Bains v. Cambra*, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claim is the opinion of the California Court of Appeal.

> "Both [witnesses] positively identified [Petitioner] as the robber in court. Both described the getaway vehicle as a white pickup truck with out-of-state plates. Both described the robber's shotgun and identified the green trench coat. The jury was entitled to determine the credibility of these and other witnesses and to resolve discrepancies in testimony. The factual determinations in this case are fully supported by substantial evidence."

[*Id.*] Respondent argues that the appellate court correctly rejected this claim and found that the jury's factual determinations were amply supported by the testimony presented at trial. [*Answer*, 6.]

There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making such a determination, a reviewing court is guided by a number of principles which reflect the doctrine that "deference [is] owed to the trier of fact." *Wright v. West*, 505 U.S. 277, 296 (1992). For example, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. In addition, it is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319; *see Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). As the Ninth Circuit has explained, "[t]he question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) (*citing Jackson*, 443 U.S. at 326). Although the court "normally must accept the jury's implicit determinations of credibility" concerning eyewitness testimony, the court is "permitted to disregard inherently improbable testimony." *United States v. Ramos-Rascon*, 8 F.3d 704, 709 n. 3 (9th Cir. 1993) (citations omitted).

Petitioner contends that the eyewitness testimony presented at trial was inherently improbable and should have been disregarded by the jury. He argues that if this testimony is disregarded, the remaining evidence is insufficient to support his convictions for robbing the shoe store at gunpoint. The prosecution called the store manager, Larry Foster, as their first witness at trial. [*Lodgment No. 2*, 9.] Mr. Foster described the events surrounding the 10:50 a.m. robbery in great detail, and was able to

positively identify Petitioner, the type of vehicle he drove, and the type of weapon he used:

> Q: What type of vehicle was the man in?
> A: White pickup truck.
>
> ( . . . )
>
> Q: The man that got out of the truck, to the best of your ability, can you describe what that person looked like?
> A: Approximately six foot four. It's hard to judge weight. He had a large green coat on, came down past the knees. Goatee. Long hair. Khaki pants. I believe he was wearing athletic shoes.
>
> ( . . . )
>
> Q: What about the color of his hair?
> A: Black with gray.
>
> ( . . . )
>
> Q: What race, ethnic background was he?
> A: I believe him to be Caucasian.
> Q: About how old?
> A: Mid 30's to 40's.
>
> ( . . . )
>
> Q: The person that robbed you, do you see that person in the courtroom today?
> A: Yes, I do.
>
> ( . . . )
>
> Q: What happened after you saw the defendant get out of the white truck?
> A: Walked up to the door. When he entered I said, "Good Morning." He pulled his coat back and produced a shotgun.
> Q: Could you described to the best of your ability what the shotgun looked like?
> A: It had a pistol grip. It was hard to distinguish the gauge. Looked like a regular size barrel.
> Q: Could you tell whether it was automatic or pump action?
> A: It looked to be pump action.

[*Lodgment No. 2*, 13-15.] He went on to testify in further detail regarding the robbery, and described standing within three feet of Petitioner while at gun point. [*Id.* at 17.]

Foster's identification testimony at trial was not inherently improbable. Although Foster could not identify Petitioner out of the initial photographic lineup which he viewed the day after the robbery, he explained under oath during the trial that he had been hesitant to make a positive identification based solely on a photograph because he felt photographs could make a person appear much different than they do in person, and he did not want to identify the incorrect person. [*Id.* at 26.] Foster mistakenly thought Petitioner had a lightening bolt tattoo on his neck, but correctly remembered observing a tattoo

on Petitioner's left hand during the robbery, which at trial was revealed to be a double lightening bolt. [*Id*. at 27; 176; 180.] Foster positively identified Petitioner as the robber at the preliminary hearing, and again at trial. [*Id*. at 172.]

Petitioner argues that the store customer who witnessed the robbery also gave inherently improbably testimony. The prosecution called Terry Burnworth, the customer, as their second witness at trial. [*Id*. at 252.] Mr. Burnworth provided a detailed physical description of the robber that corroborated Mr. Foster's testimony and matched Petitioner's general appearance. [*Id*. at 253-54.] Unlike Mr. Foster, Mr. Burnworth positively identified Petitioner from a photographic lineup, again at the preliminary hearing, and at trial. [*Id*. at 263, 270-71.] Mr. Burnworth also corroborated Mr. Foster's description of the getaway vehicle as a "white pickup truck" and confirmed that the truck had out-of-state license plates, although he provided discrepant testimony with respect to the make and model of the truck. [*Id*. at 260-61.]

The prosecution presented additional physical evidence at trial, including photos of the getaway car after it was seized from in front of Petitioner's residential location, its out-of-state license plates, and the clothes Petitioner wore during the robbery, all of which corroborated both men's testimony and implicated Petitioner in the crime. After being given standard instructions regarding the factors to be evaluated in considering eyewitness identification, the jury resolved the minor discrepancies in testimony in favor of the prosecution. The testimony of a single eyewitness is sufficient to prove the identity of a perpetrator of a crime, even if that witness' testimony is contested. *United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977). The largely consistent testimony of two eyewitnesses, plus additional evidence, is more than sufficient to support Petitioner's convictions.

Petitioner makes the secondary argument that the appellate court based its ruling on an unreasonable application of controlling law by relying on outdated case law. [*Petitioner's Memorandum*, 3.] Specifically, Petitioner argues that the court applied the incorrect state law test to determine whether the eyewitness testimony at his trial was inherently improbable and therefore insufficient to support his conviction. Petitioner contends that the "correct" test is whether the evidence is "reasonable, credible, and of solid value" to support a finding beyond a reasonable doubt, and that the court inappropriately judged the evidence under a "plainly false" standard. [*Id*.] In its ruling, the

appellate court specifically states: "Substantial evidence is evidence that is reasonable, credible, and of solid value." [*Lodgment No. 6*, 3; *Lodgment No. 17*, 4.] The appellate court did not rely upon outdated law, cited the correct standards of law, and applied them in a reasonable manner to conclude that sufficient evidence supported Petitioner's convictions. The appellate court's rejection of this claim was not objectively unreasonable, nor did it result in a decision that was contrary to, or involved an unreasonable application of clearly established federal law. Accordingly, the Court **RECOMMENDS** that Petitioner's first claim be **DENIED**.

### 2) Claim Two: Illegality of his Sentence

Petitioner claims that the trial court erred in imposing an upper term sentence for his robbery conviction by finding aggravating factors to be true without a jury trial. [*Petition*, 6-7; *Petitioner's Memorandum*, 3.] Petitioner argues that the trial court's finding of multiple aggravating factors constitutes a violation of his Sixth amendment right to a trial by jury pursuant to the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent contends that the recent Supreme Court opinion in *Cunningham v. California*, --- U.S. ----, 127 S.Ct. 856 (Jan. 22, 2007), "casts Petitioner's claim in a significantly different light," and Petitioner should be permitted to return to state court to present the claim again in light of *Cunningham* while the Petition is stayed in this Court. [*Answer*, 8.] Respondent alternately contends that although the claim is unexhausted, the Court should deny it as being without merit pursuant to 28 U.S.C. § 2254(b)(2) on the basis that: (1) habeas relief is barred by *Teague v. Lane*, 489 U.S. 288 (1989); (2) the rejection of the claim by the state court was objectively reasonable; and (3) because any error was harmless. [*Answer*, 10, 16-17.]

At the conclusion of trial and prior to sentencing, Petitioner waived his rights to a jury or bench trial on his prior strike allegations and admitted having suffered a prior felony conviction for bank robbery in 1996. [*Lodgment No. 2*, 679.] The trial judge made the following statement at sentencing:

> "The Court understands the various discretionary sentencing choices that the Court possesses within the overall sentencing fabric or framework of this case. The Court, for the record, designates count 1, the robbery offense, as the principal offense in this case. The base term for robbery is two, three, or five years. The Court has weighed and considered the mitigants as against the aggravants as applicable to that offense and as otherwise applicable to Mr. Jordan personally, and the Court concludes that, upon such a weighing process having been conducted, that the pendulum falls in favor of the upper

term of five years as the base term sentence choice appropriately in this case.

As factors in aggravation, the Court cites and gives weight to Rule 4.421, parentheses A, subparentheses 1, that the defendant's actions in this case disclosed a high degree of callousness in that while having the shotgun pointed at the victim, he racked the weapon which expended an unspent round from the chamber.

Further aggravants are found within the meaning of Rule 4.421, parentheses A, subparentheses 8, that the manner in which the robbery was carried out indicated substantial planning. The getaway vehicle had been stolen some days or relatively short time prior to the robbery. The shotgun was already loaded when Mr. Jordan entered the store.

Further, within the meaning of Rule 4.421, parentheses B, subparentheses 2, apart from the conviction that provides the basis for the strike allegation and the serious felony allegation, Mr. Jordan otherwise has an extensive prior record of criminal conduct with numerous felony and misdemeanor convictions.

Further, within the meaning of Rule 4.421, parentheses B, subparentheses 3, the defendant has served prior prison terms predicated upon the referenced convictions or some of them.

Further, within the meaning of Rule 4.421, parentheses B, subparentheses 5, the defendant's recent performance while on federal supervised release was unsatisfactory. He violated the conditions of his release and was recommitted to federal custody.

The Court therefore sets the base term for count 1 at the upper term of five years. That base term is doubled by operation of law by reason of the admission of the strike prior allegation to a sentence of 10 years on count 1."

[*Lodgment No. 2*, 905-7.] Due to further enhancements and after calculating the terms on each of the separate convictions, the trial judge sentenced Petitioner to a total term of twenty-five years. [*Id*. at 910-11.]

In *Apprendi*, the Court held that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury incorporated therein, requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476-77, 490. In *Blakely* the Court defined the term "statutory maximum" as used in *Apprendi* to mean "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. Petitioner argues that, pursuant to the holdings in *Apprendi* and *Blakely*, the trial court erroneously relied upon the following factors when sentencing him to the upper term on the robbery count: 1) defendant's actions disclosed a high degree of callousness, 2) the manner in which the robbery was carried out indicated substantial planning, 3) defendant's prior

record of convictions, 4) defendant having served prior prison terms, and 5) unsatisfactory performance while on federal supervised release. [*Petitioner's Memorandum*, 3.]

Petitioner did not raise this issue in his first direct appeal because the *Blakely* decision had not yet been rendered. [*See Lodgment No. 3*.] Subsequent to *Blakely*, Petitioner sought rehearing before the appellate court. [*See Lodgment No. 7*.] The court granted his petition for hearing and affirmed his convictions, but concluded that the appropriate relief under *Blakely* was remand to the trial court for re-sentencing because there was "no finding by the jury to support all of the factors relied on by the trial court in its selection of its upper term" sentence. [*Lodgment No. 11*, 10.] Both Petitioner and the prosecution appealed the appellate court's rulings. [*See Lodgment Nos. 12 & 13*.] The California Supreme Court denied Petitioner's request for review, but granted the prosecution's petition for review. [*See Lodgment No. 14*.] The California Supreme Court in *People v. Black* attempted to salvage California's sentencing scheme by finding that the "statutory maximum" for *Apprendi* purposes was the entire range of terms, from lower through upper, and that because the factors used to impose upper terms were subject to a reasonableness requirement, they were the functional equivalent of the advisory provisions of the federal guidelines. *People v. Black*, 35 Cal.4th 1238, 1255-56 (2005), vacated by *Black v. California*, 127 S.Ct. 1210 (2007). Subsequent to its ruling in *Black*, the state supreme court ordered the appellate court to vacate its previous determination that Petitioner's sentence violated *Blakely* and to reconsider the issue. [*See Lodgment No. 15*.]  That was the state of the law at the time Petitioner sought relief in the state appellate and supreme courts, and at the time his conviction became final.

Under the doctrine of stare decisis, the Court of Appeals was bound to follow the decision of the State's highest court. *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 455 (1962). Citing *Black*, upon rehearing the appellate court determined that the trial court had not violated Petitioner's Sixth amendment rights when imposing an upper term sentence based on its finding of aggravating factors. [*Lodgment No. 17*, 9.] The appellate court rejected Petitioner's *Blakely* claim on the basis that the California Supreme Court had determined in *Black* that California's sentencing scheme did not violate the Sixth Amendment. [*Id.*]

In *Cunningham v. California*, --- U.S. ----, 127 S.Ct. 856 (Jan. 22, 2007), the Supreme Court,

citing *Apprendi* and *Blakely*, rejected the California Supreme Court's ruling in *People v. Black* and held that California's determinate sentencing law ("DSL") violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than a jury. The Court held that because California Penal Code section 1170(b) and the implementing California Rules of Court allow for imposing an upper term only by a fact that a judge finds by a preponderance of the evidence, the jury trial and reasonable doubt requirements of due process were missing in California's determinate sentencing scheme. *Cunningham*, 127 S.Ct. at 868. The Supreme Court vacated *Black* and remanded for reconsideration in light of *Cunningham*. *Black v. California*, 127 S.Ct. 1210 (2007). Upon remand, the California Supreme Court reconsidered *Black* and held that:

> "Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . [California's sentencing law] violates Apprendi's bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"

*Cunningham*, 127 S.Ct. at 868, *quoting Apprendi*, 530 U.S. at 490.

California law provides that the existence of prior convictions is an aggravating factor which can support the imposition of an upper term. Had the trial judge here imposed the upper term based solely on the fact that Petitioner had suffered the prior convictions, admitted by Petitioner after he waived his state right to a trial as to the prior conviction allegations, the Sixth Amendment would not be implicated due to the *Apprendi* exception. However, the trial judge also relied on several other factors in imposing the upper term, including 1) the degree of callousness evidenced by Petitioner's use of the shotgun during the robbery to intimidate his victim, 2) the substantial planning evidenced by the pre-loaded shotgun and the stolen getaway vehicle, 3) defendant's prior criminal history, including Petitioner's prior prison terms, and 4) the fact that the crime was committed while Petitioner was serving a term of federal supervised release. [*Lodgment No. 2*, 905-7.] Thus, this Court must determine whether a federal Constitutional violation occurred when the trial judge selected the upper term sentence for Petitioner's robbery conviction. This requires addressing Respondent's argument that clearly established federal law was not violated because *Cunningham* does not prevent imposition of upper term sentences when they are imposed on the basis of prior convictions, but that even if the rule of *Cunningham* was violated, *Teague* precludes application of such a new rule.

Respondent first argues that Petitioner's claim is unexhausted because the state court has not had an opportunity to apply the Supreme Court's holding in *Cunningham* to Petitioner's case.[2] [*Answer*, 8-10.] Petitioner's claim was denied by the appellate court here on the basis of the now-invalid holding of *Black*. In the interim period, the state supreme court decided that *Cunningham* rendered California's DSL unconstitutional, and the state legislature has enacted a new sentencing scheme. As such, state court remedies remain available to Petitioner, and his claim is technically unexhausted. *See Picard v. Connor*, 404 U.S. 270, 276 (1971) (noting that it is an open issue whether intervening change in federal law can render a previously exhausted claim unexhausted), *citing Blair v. California*, 340 F.2d 741 (9th Cir. 1965) (holding that an intervening change in federal law that casts a claim in a fundamentally different light can render an exhausted claim unexhausted).

The Court notes, however, that the Petition can be denied notwithstanding the fact that the claim is unexhausted. Section 2254(b)(2) provides that: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C.A. § 2254(b)(2). However, the Ninth Circuit has held "that a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005), cert. denied, 126 S.Ct. 1336 (2006). This standard is satisfied only if it is perfectly clear that Petitioner "has no chance of obtaining relief." *Id.* at 624. The Court in *Cassett* held that such a high standard was necessary to give due consideration to the principles of comity and the legislative goals of AEDPA, and to thereby avoid "depriv[ing] state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.*

Respondent contends that Petitioner has no chance of obtaining relief on his claim because *Teague v. Lane*, 489 U.S. 288 (1989), prevents him from taking advantage on collateral review of the new rule of constitutional law announced in *Cunningham*. In *Teague*, the Supreme Court held that a new procedural (as opposed to substantive) rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence. *See id*. There are two exceptions to

---

[2] The Court notes that Respondent filed his Answer prior to the California Supreme Court's reconsideration of its holding in *People v. Black*.

non-retroactivity: 1) "rules forbidding punishment of certain primary conduct or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense," and 2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard v. Banks*, 542 U.S. 406, 416-17 (2004).

In order to determine the threshold question of whether the right recognized in *Cunningham* is a "new rule" within the meaning of *Teague*, courts must determine whether the rule was dictated by the precedent of *Apprendi*, *Blakely* and/or *United States v. Booker*, 543 U.S. 220 (2005), such that it cannot be considered "new." Respondent correctly points to Ninth Circuit cases finding that *Apprendi*, *Blakely* and *Booker* have each announced a new rule under *Teague*, and argues that *Cunningham* announced a new rule for the same reasons. [*Answer*, 13, *citing Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir.), cert. denied, 126 S.Ct. 442 (2005) (Apprendi), *Schardt v. Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005) (Blakely), and *United States v. Cruz*, 423 F.3d 1119, 1120-21 (9th Cir. 2005), cert. denied, 126 S.Ct. 1181 (2006) (Booker).).] For example, in *Schardt* the Ninth Circuit held that *Blakely* does not apply retroactively to convictions that became final prior to its final publication on June 24, 2004. *Schardt*, 414 F.3d at 1027. The court reasoned that *Blakely* did not announce a new substantive rule and only announced a new procedural rule because it merely allocated some of the decision-making authority previously held by judges to juries. *Schardt*, 414 F.3d at 1036. Specifically with respect to the issue of whether these types of changes in the law should be considered substantive or procedural, the Supreme Court held in *Schriro v. Summerlin*, 542 U.S. 348 (2004), that a rule "requiring that a jury rather than a judge find the essential facts bearing on punishment" in capital cases was a "prototypical" procedural rule under *Teague*.[3] *Schriro*, 542 U.S. at 354. Thus, following consistent Supreme Court

---

[3] In explaining whether a new rule of law should be considered "substantive" or "procedural," and thus whether it should be applied collaterally to convictions that have become final, the Supreme Court in *Schriro* held that:

"When a decision of this Court results in a 'new rule,' that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances. New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. Such rules apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal"' or faces a punishment that the law cannot impose upon him. We have sometimes referred to rules of this latter type as falling under an exception to *Teague*'s bar on

and Ninth Circuit precedent in this area, *Cunningham* announced a new procedural rule of constitutional law.[4]

The second inquiry under *Teague* is whether the new procedural rule of constitutional law announced in *Cunningham* should be applied retroactively to convictions that were final prior to its publication. New procedural rules do not apply retroactively unless they amount to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.*; *Teague*, 489 U.S. at 311. As in *Blakely*, the decision in *Cunningham* shifted decision-making authority previously held by judges to juries, making it a procedural rule rather than a substantive rule. Furthermore, the Ninth Circuit has held that a change in law that requires juries rather than judges to make the factual findings on which a sentence is based does not announce a watershed rule in criminal procedure. *Schardt*, 414 F.3d at 1036. Thus, *Cunningham* does not fall under the watershed rule of criminal procedure exception to non-retroactivity. Petitioner's conviction became final on April 18,

---

retroactive application of procedural rules; they are more accurately characterized as substantive rules not subject to the bar.

New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any ... 'ha[s] yet to emerge.'"

*Schriro v. Summerlin*, 542 U.S. 348, 351-53 (2004) (Citations omitted).

[4] The Court notes that this determination is consistent with the recent holding in *Ayala v. Ayers*, 2007 WL 2019538 (S.D.Cal. 2007, 7/9/2007), in which the Chief Judge of this district reasoned that: "Similarly, Petitioner is precluded from relying on the Supreme Court's decision in *Cunningham*, 127 S.Ct. 826 (2007), as that decision was rendered well after Petitioner's conviction was finalized. The Ninth Circuit has previously held the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), announced a new rule of criminal procedure that did not apply retroactively to convictions that became final prior to its publication. *See Schardt v. Payne*, 414 F.3d 1025, 1027 (9th Cir. 2005). The Supreme Court's recent decision in *Cunningham* applied *Blakely*'s reasoning to the California determinate sentencing scheme. *See Cunningham*, 127 S.Ct 826. Accordingly, the *Cunningham* decision announced a new rule of criminal procedure, one which is not a "watershed" rule, and thus cannot be applied retroactively to Petitioner's conviction. Petitioner is barred under *Teague v. Lane* from relying on the Supreme Court's decisions in *Ring v. Arizona* and *Cunningham v. California*." Other district courts in the Ninth Circuit concur. *See e.g., Salerno v. Schriro* 2007 WL 2153584 (D.Ariz. 2007, 7/24/2007) (holding that "Although the retroactivity of *Cunningham* has not yet been addressed in the Ninth Circuit, because *Cunningham* relies heavily on the new procedural rule announced in *Blakely v. Washington*, 542 U.S. 296 (2004), and because the Ninth Circuit has already decided that *Blakely* is not retroactive, then *Cunningham* is also not retroactive").

2006, ninety days after the California Supreme Court denied Petitioner's final petition for review. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Because Petitioner's conviction became final before *Cunningham* was decided on January 22, 2007, *Cunningham* is not applicable to Petitioner's sentence. *Teague* therefore prevents him from taking advantage of the new rule announced in *Cunningham*.

The Court notes that even if *Cunningham* were to be retroactively applied, Petitioner could not prevail on his claim. As stated above, only one aggravating factor need be found to enhance California's mid-term to the upper term. *See, e.g. People v. Reyes* (2007) 150 Cal.App.4th 735. In Petitioner's case, the trial court relied upon multiple aggravating factors, including Petitioner's prior convictions. [*Lodgment No. 2*, 906-7.] In *Stokes v. Schriro*, 465 F.3d 397, 402-03 (9th Cir. 2006), the Ninth Circuit held that "[a] statutory maximum need not be defined by every one of the facts found at trial, so long as the defendant is not exposed to a greater punishment than that authorized solely by those facts or the fact of a prior conviction." *Stokes*, 465 F.3d at 402-03 (internal quotations and citations omitted). Combining this holding with *Cunningham*'s affirmation of *Apprendi*'s rule that prior convictions are explicitly excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, the Court finds that the state court's decision to uphold Petitioner's upper term sentence was reasonable because the sentence was based on Petitioner's prior convictions. *Apprendi*, 530 U.S. 466, 490 (2000). Petitioner's prior convictions alone exposed him to the upper term of the sentencing range on the robbery conviction. Although the trial judge also found several other aggravating factors, Petitioner's admitted prior felony conviction was sufficient to expose him to the upper term. *Blakely*, 542 U.S. at 303-04. In other words, without any additional jury findings, Petitioner's prior convictions expanded the sentencing range to include an upper term sentence.

Because Petitioner has not shown that adjudication of his second claim in the state court proceedings was contrary to or involved an unreasonable application of, clearly established federal law as it existed prior to the date upon which his conviction became final, or that it was based on an unreasonable determination of the facts, the Court **RECOMMENDS** that Petitioner's second claim be **DENIED**.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS ORDERED** that no later than *August 31, 2007*, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *September 7, 2007*.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  August 8, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge