**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOYLE D. JORDAN,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WARDEN EVANS,<br><br>　　　　　Respondent. | Civil No. 07CV466-J (NLS)<br><br>**ORDER:**<br><br>**(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION; AND**<br><br>**(2) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS.** |

Before the Court is Magistrate Judge Nita L. Stormes' Report and Recommendation ("R&R") recommending that the Court deny Petitioner Doyle D. Jordan's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. No. 6.] As of this date, Petitioner has not filed Objections to the R&R. For the reasons set forth below, this Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

*Factual Background*

The following statement of facts is taken from the appellate court opinion denying Petitioner's state habeas petition:

> On December 16, 2006, a man later identified as [Petitioner] entered a shoe store in Rancho San Diego wearing a green trench coat and carrying a shotgun. The man approached the manager, cocked the shotgun, causing a shell to fall to the floor, and demanded money. After taking $153 from the

> manager, the man left the store in a white truck with out-of-state plates. The next day, the San Diego County Sheriff's Department recovered a stolen white GMC Sierra Truck with out-of-state plates in front of a residence in Lemon Grove. The Sierra contained a green trench coat, a shotgun and shells of the same color and type found in the shoe store. Deputies arrested [Petitioner] in a motor home parked in the driveway of the same residence.
> 
> The shoe store manager believed the man who robbed the store had a lightning bolt or flame tattoo on his neck and a starburst or compass tattoo on his left hand. [Petitioner] does not have a tattoo on his neck but does have a tattoo with points on his left hand. The manager failed to identify [Petitioner] in a pretrial photographic lineup. A customer present in the store at the time of the robbery identified [Petitioner] as the man who committed the robbery in a pretrial photographic lineup. Both the manager and the customer identified [Petitioner] at trial.
> 
> When shown photographs of the Sierra seized in front of the home where [Petitioner] was staying, the manager identified the truck as the "very same" truck involved in the robbery. The customer identified the truck as a similar truck but not the same truck. The customer was certain the truck involved in the robbery was a Ford F-150. Both the manager and the customer described the truck involved in the robbery as having out-of-state plates.

(Lodgm't No. 6, *People v. Jordan*, No. 042720, slip op. at 2-3 (Cal. Ct. App. June 25, 2004).)

### *Procedural Background*

On April 8, 2003, a jury convicted Petitioner of the following crimes: (1) robbery, (2) use of a firearm during the commission of the robbery, (3) assault with a firearm, (4) second degree burglary, (5) use of a firearm during the commission of the burglary, (6) unlawful taking or driving of a vehicle, and (7) possession of a firearm by a felon. (*See* Lodgm't No. 2 at 662-64.) Petitioner waived his right to a trial on his criminal history allegations, and admitted that a 1996 bank robbery was a "serious felony" prior and a "strike prior" under California law. (*See id.* at 673.) On June 25, 2003, the trial court sentenced Petitioner to twenty-five years incarceration. (*Id.* at 907.)

Petitioner appealed the robbery, burglary, and assault convictions, raising the single claim that the convictions violated his due process rights because they were based on insufficient evidence. (Lodgm't No. 3 at 9.) The California Court of Appeal rejected this claim, finding that the jury's factual determinations were supported by substantial evidence, and affirmed Petitioner's conviction and sentence. (*See* Lodgm't No. 6.) Petitioner then requested a rehearing for the appellate court to consider whether Petitioner's upper-term sentence was unconstitutional under the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296

(2004).  (*See* Lodgm't No. 7.)  The appellate court granted the request, and ordered briefing on the single issue of whether the *Blakely* decision had any impact on Petitioner's sentence. (Lodgm't No. 8.)  The appellate court eventually affirmed Petitioner's conviction and sentence in full.  (Lodgm't No. 19 at 9.)  On January 18, 2006, the California Supreme Court denied Petitioner's final Petition for Review.  (Lodgm't No. 19.)  On March 12, 2007, Petitioner filed the instant Petition in this Court pursuant to 28 U.S.C. § 2254.  (*Id.*)

## *Legal Standard*

### I. State Prisoner Habeas Corpus Standard

A federal court's duty in examining a state prisoner's habeas petition is governed by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  Pursuant to AEDPA, a federal court may grant habeas corpus relief from a state court judgment only if the adjudication was (1) contrary to, or involved an unreasonable application of, clearly established federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A federal court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).  The court may grant relief under the "unreasonable determination" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case.  *Id.* at 76.  Additionally, the state court's factual determinations are presumed correct, and the petitioner carries the burden of rebutting this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

### II. Reviewing a Magistrate Judge's R&R

The district court's duties in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).   The district court must "make a *de novo* determination of

those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980). "When no objections are filed, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law." *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). "Under such circumstances, the Ninth Circuit has held that 'a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*.' " *Id.* (quoting *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989)). As of this date, Petitioner has not filed objections to the R&R. Accordingly, this Court will decide the Petition on the applicable law.

## *Discussion*

Petitioner raises two claims: (1) his Due Process rights were violated at trial because the evidence was insufficient to sustain his robbery, burglary, and assault with a firearm convictions; and (2) the trial court erred in imposing the upper-term sentence for his robbery conviction by finding aggravating factors to be true without a jury trial in violation of his Due Process and Confrontation Clause rights. (Pet'r's Pet. at 6-7.) Respondent has answered the Petition, and argues that the California Court of Appeal reasonably rejected Petitioner's insufficiency of the evidence claim. (Answer at 6-7.) With respect to Petitioner's second claim, Respondent contends the claim should be denied because granting relief would violate the United States Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288 (1989), which prohibits the retroactive application on federal habeas review of a new rule of constitutional law, and in the alternative, that the claim is unexhausted. (*Id*. at 7, 10.)

**I. Claim One: Insufficiency of the Evidence**

Petitioner contends that the eyewitness testimonial evidence presented at trial was constitutionally insufficient to support his convictions. (Supp. Mem. Attach. to Pet. ("Pet'r's Mem.") at 1.) Petitioner claims that the two witnesses to the robbery, the store manager and a store customer, each gave detailed descriptions of his physical features and the "getaway" truck that conclusively excluded Petitioner as a suspect. (*Id*.) Petitioner argues that the store manager,

the individual who had the closest contact with the robber and handed over the store's cash, testified that the robber had a tattoo on his neck. (*Id.*) Petitioner does not have a tattoo on his neck. (*Id.*)  The store manager also failed to identify Petitioner out of the initial photographic lineup, and could not positively identify Petitioner as the robber until he saw him in court. (*Id.* at 1-2.)  Petitioner argues that although the store customer correctly identified him in an initial photographic lineup, the lineup was unfairly suggestive because Petitioner's long and conspicuous goatee made him stand out from the other individuals in the lineup. (*Id.* at 2.)  In addition, the customer testified that the GMC truck found in front of the house where Petitioner was staying when the police found him was not the "getaway" truck. (*Id.*)  Based on these discrepancies, Petitioner argues that the witnesses' testimony was unreliable and inherently improbable, and therefore constituted insufficient evidence to support the jury's guilty verdict. (*Id.* at 1-3.)

Petitioner raised this claim on direct appeal. (*See* Lodgm't Nos. 6, 17.)  The California Court of Appeal rejected Petitioner's argument,[1] and concluded that neither the store manager's nor the store customer's testimony was inherently improbable. (Lodgm't No. 6 at 4.)  Specifically, the appellate court noted:

> Both [witnesses] positively identified [Petitioner] as the robber in court.  Both described the getaway vehicle as a white pickup truck with out-of-state plates.  Both described the robber's shotgun and identified the green trench coat.  The jury was entitled to determine the credibility of these and other witnesses and to resolve discrepancies in testimony.  The factual determinations in this case are fully supported by substantial evidence.

(*Id.*)  Respondent argues that the appellate court correctly rejected this claim and found that the testimony presented at trial amply supported the jury's factual determinations. (Answer at 6.)

There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

---

[1] Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Bains v. Cambra*, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of the Petitioner's claim is the California Court of Appeal's opinion.

(1979) (emphasis added).  In making such a determination, a reviewing court is guided by a number of principles which reflect the doctrine that "deference [is] owed to the trier of fact." *Wright v. West*, 505 U.S. 277, 296 (1992).  For example, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  In addition, it is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id*. at 319; *see also Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  As the Ninth Circuit has explained, "[t]he question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).  Although the court "normally must accept the jury's implicit determinations of credibility" concerning eyewitness testimony, the court is "permitted to disregard inherently improbable testimony."[2]  *United States v. Ramos-Rascon*, 8 F.3d 704, 709 n.3 (9th Cir. 1993) (citations omitted).

Petitioner contends that the eyewitness testimony presented at trial was inherently improbable and should have been disregarded by the jury. (Pet'r's Mem. at 1.)  He argues that if this testimony is disregarded, the remaining evidence is insufficient to support his convictions for robbing the shoe store at gunpoint.  (*Id.*)  The prosecution called the store manager, Larry Foster, as its first witness at trial. (Lodgm't No. 2 at 9.)  Mr. Foster described the events surrounding the 10:50 a.m. robbery in great detail, and was able to positively identify Petitioner, the type of vehicle he drove, and the type of weapon he used:

By deputy district attorney Kirvin:

( . . .)

---

[2] In *Ramos-Rascon*, the Ninth Circuit found some of the government's evidence concerning the appellants' hyper-vigilance to be inherently improbable. 8 F.3d at 709 n.3. A Drug Enforcement Agency officer who tailed appellants' truck testified that, during part of the journey, he drove parallel to the truck, one block away, and that he could see the appellants behaving in a "hyper-vigilant" manner. The Ninth Circuit reasoned that it "simply defies logic to believe that a law enforcement agent can observe the extra degree of awareness the officer described here under these circumstances." *Id*.

| | | |
|---|---|---|
| 1 | Q: | What type of vehicle was the man in? |
| | A: | White pickup truck. |
| 2 | | |
| | ( . . . ) | |
| 3 | | |
| | Q: | The man that got out of the truck, to the best of your ability, can you describe what that person looked like? |
| 4 | A: | Approximately six foot four. It's hard to judge weight. He had a large green coat on, came down past the knees. Goatee. Long hair. Khaki pants. I believe he was wearing athletic shoes. |
| 5 | | |
| 6 | | |
| | ( . . . ) | |
| 7 | | |
| | Q: | What about the color of his hair? |
| 8 | A: | Black with gray. |
| 9 | ( . . . ) | |
| 10 | Q: | What race, ethnic background was he? |
| | A: | I believe him to be Caucasian. |
| 11 | Q: | About how old? |
| | A: | Mid 30s to 40s. |
| 12 | | |
| | ( . . . ) | |
| 13 | | |
| | Q: | The person that robbed you, do you see that person in the courtroom today? |
| 14 | A: | Yes, I do. |
| | Q: | Could you describe where that person is and what he's wearing today? |
| 15 | A: | Sitting over here with the collar on. |

Mr. Kirvin: Your honor, may the record reflect the witness has identified the defendant?
The Court: Yes, as seated here in the courtroom.

By deputy district attorney Kirvin:

Q: What happened after you saw the defendant get out of the white truck?
A: Walked up to the door. When he entered I said, "Good morning." He pulled his coat back and produced a shotgun.
Q: Could you describe to the best of your ability what the shotgun looked like?
A: It had a pistol grip. It was hard to distinguish the gauge. Looked like a regular size barrel.
Q: Could you tell whether it was automatic or pump action?
A: It looked to be pump action.

(*Id.* at 13-15.) Mr. Foster then testified about the robbery in further detail, and described

standing within three feet of Petitioner while at gunpoint. (*Id.* at 17.)

Although Mr. Foster could not identify Petitioner out of the initial photographic lineup,

Mr. Foster's identification testimony at trial was not inherently improbable. (*See id.* at 26.) Mr.

Foster explained under oath during the trial that he had been hesitant to make a positive

identification based solely on a photograph because "the lighting of the picture sometimes would

7

make it different or a person look different, and I didn't want to be wrong." (*Id.*)  Mr. Foster also mistakenly thought Petitioner had a lightning bolt tattoo on his neck, but correctly remembered observing a tattoo on Petitioner's left hand during the robbery, which at trial was revealed to be a double lightning bolt.  (*See id*. at 27, 176, 180.)

Petitioner argues that the store customer who witnessed the robbery also gave inherently improbable testimony.  The prosecution called Terry Burnworth, the customer, as its second trial witness.  (*Id*. at 251-52.)  Mr. Burnworth provided a detailed physical description of the robber that corroborated Mr. Foster's testimony and matched Petitioner's general appearance.  (*Id*. at 253-54.)  Unlike Mr. Foster, Mr. Burnworth positively identified Petitioner from a photographic lineup, again at the preliminary hearing, and at trial.  (*Id*. at 254, 263-64.)  Mr. Burnworth also corroborated Mr. Foster's description of the getaway vehicle as a "white pickup truck" and confirmed that the truck had out-of-state license plates, although his testimony regarding the truck's make and model was incorrect.  (*Id*. at 260-61.)

The prosecution presented additional physical evidence at trial, including photos of the getaway car after it was seized from Petitioner's residence, the shotgun, and the clothes Petitioner wore during the robbery, all of which corroborated both men's testimony and implicated Petitioner.  (*Id.* at 360-68.)  After being given standard instructions regarding the factors to be evaluated in considering eyewitness identifications, the jury reached guilty verdicts—implicitly resolving the minor testimonial discrepancies in the prosecution's favor. (*Id.* at 662-64.)  A single eyewitness's testimony is sufficient to prove the identity of a crime's perpetrator, even if that witness's testimony is contested.  *See United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977).  The two eyewitnesses' largely consistent testimony, plus the additional physical evidence, is more than sufficient to support Petitioner's convictions.

Petitioner makes the secondary argument that the appellate court applied a rule different from the governing law because it relied on outdated case law.  (Pet'r's Mem. at 3.) Specifically, Petitioner argues that the court applied the incorrect state law test to determine whether the eyewitness testimony at his trial was inherently improbable and therefore insufficient to support his convictions.  (*Id.*)  Petitioner contends that the court incorrectly judged

the evidence under a "plainly false"[3] standard.  Petitioner claims that the correct standard is whether the evidence is "reasonable, credible, and of solid value" to support a finding beyond a reasonable doubt.  (*Id.*)  In its ruling, the appellate court correctly stated that the substantial evidence standard is whether the evidence is "reasonable, credible, and of solid value." (Lodgm't No. 6 at 3 (citing *People v. Johnson*, 606 P.2d 738, 750 (Cal. 1980)); Lodgm't No. 17 at 4.)  The court then correctly stated that "plainly false" is the standard governing whether witness testimony should be disregarded because it is inherently improbable.  (Lodgm't No. 6 at 4 (citing *People v. Thornton*, 523 P.2d 267, 277 (Cal. 1974), *overruled on other grounds by People v. Flannel*, 603 P.2d 1, 11  n.12 (Cal. 1979)); Lodgm't No. 17 at 4.)  The appellate court did not rely upon outdated law.  Rather, the appellate court cited the correct legal standards, and applied them in a reasonable manner to conclude that sufficient evidence supported Petitioner's convictions.  The appellate court's rejection of this claim was not objectively unreasonable, nor did it result in a decision that was contrary to or involved an unreasonable application of clearly established federal law.

**II.  Claim Two: Illegality of Petitioner's Sentence**

Petitioner claims that the trial court erred in imposing an upper-term sentence for his robbery conviction by finding aggravating factors to be true without a jury trial.  (Pet. at 6-7; Pet'r's Mem. at 3.)  Petitioner argues that the trial court's finding of multiple aggravating factors constitutes a violation of his Sixth Amendment right to a jury trial pursuant to the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).  In opposition, Respondent contends that the recent Supreme Court opinion in *Cunningham v. California*, 127 S. Ct. 856 (2007), "casts Petitioner's claim in a significantly different light," and Petitioner should be required to return to state court to present the claim again in light of *Cunningham* while the Petition is stayed in this Court.  (Answer at 8.) Respondent alternately contends that if the claim is  exhausted, the Court should deny it as being

---

[3] To warrant the rejection of witness testimony believed by the trial court to be inherently improbable, the witness's statements must either be plainly false without resorting to any inferences or deductions, or there must exist physical impossibility that they are true.  *People v. Thornton*, 523 P.2d 267, 277 (Cal. 1974), *overruled on other grounds by People v. Flannel*, 603 P.2d 1, 11 n.12 (Cal. 1979); *People v. Headlee*, 115 P.2d 427, 427 (Cal. 1941).

without merit pursuant to 28 U.S.C. § 2254(b)(2) on the basis that: (1) habeas relief is barred by *Teague v. Lane*, 489 U.S. 288 (1989); (2) the state court's rejection of the claim was objectively reasonable; and (3) any error was harmless. (Answer at 10, 16-17.)

**A.     Petitioner's Sentencing**

At the trial's conclusion and prior to sentencing, Petitioner waived his right to a jury or bench trial on his prior strike allegations and admitted having suffered a prior felony conviction for a 1996 bank robbery. (Lodgm't No. 2 at 679.) The trial judge made the following statement at sentencing:

> The Court understands the various discretionary sentencing choices that the Court possesses within the overall sentencing fabric or framework of this case. The Court, for the record, designates count 1, the robbery offense, as the principal offense in this case. The base term for robbery is two, three, or five years. The Court has weighed and considered the mitigants as against the aggravants as applicable to that offense and as otherwise applicable to Mr. Jordan personally, and the Court concludes that, upon such a weighing process having been conducted, that the pendulum falls in favor of the upper term of five years as the base term sentence choice appropriately in this case.
>
> As factors in aggravation, the Court cites and gives weight to Rule 4.421, parentheses A, subparentheses 1, that the defendant's actions in this case disclosed a high degree of callousness in that while having the shotgun pointed at the victim, he racked the weapon which expended an unspent round from the chamber.
>
> Further aggravants are found within the meaning of Rule 4.421, parentheses A, subparentheses 8, that the manner in which the robbery was carried out indicated substantial planning. The getaway vehicle had been stolen some days or relatively short time prior to the robbery. The shotgun was already loaded when Mr. Jordan entered the store.
>
> Further, within the meaning of Rule 4.421, parentheses B, subparentheses 2, apart from the conviction that provides the basis for the strike allegation and the serious felony allegation, Mr. Jordan otherwise has an extensive prior record of criminal conduct with numerous felony and misdemeanor convictions.
>
> Further, within the meaning of Rule 4.421, parentheses B, subparentheses 3, the defendant has served prior prison terms predicated upon the referenced convictions or some of them.
>
> Further, within the meaning of Rule 4.421, parentheses B, subparentheses 5, the defendant's recent performance while on federal supervised release was unsatisfactory. He violated the conditions of his release and was recommitted to federal custody.

> The Court therefore sets the base term for count 1 at the upper term of five years. That base term is doubled by operation of law by reason of the admission of the strike prior allegation to a sentence of 10 years on count 1.

(Lodgm't No. 2, 905-07.) Due to further enhancements and after calculating each separate conviction's term, the trial judge sentenced Petitioner to a twenty-five-year term. (*Id*. at 910-11.)

In *Apprendi*, the United States Supreme Court held that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury require that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476-77, 490. In *Blakely*, the Court defined the term "statutory maximum" as used in *Apprendi* to mean "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. Petitioner argues that, pursuant to the holdings in *Apprendi* and *Blakely*, the trial court erroneously relied upon the following factors when sentencing him to the upper term on the robbery count: (1) his actions disclosed a high degree of callousness; (2) the manner in which he carried out the robbery indicated substantial planning; (3) he had a prior record of convictions; (4) he had served prior prison terms; and (5) his performance while on federal supervised release was unsatisfactory. (Pet'r's Mem. at 3.)

**B.     Petitioner's Petition for Rehearing Before the California Court of Appeal**

Petitioner did not raise his *Blakely* claim in his first direct appeal because the *Blakely* decision had not yet been rendered. (*See* Lodgm't No. 3.) Subsequent to *Blakely*, Petitioner sought rehearing before the California Court of Appeal. (*See* Lodgm't No. 7.) The court granted his petition for hearing and affirmed his convictions, but concluded that the appropriate relief under *Blakely* was remand to the trial court for resentencing because there was "no finding by the jury to support all of the factors relied on by the trial court in its selection of its upper term" sentence. (Lodgm't No. 11 at 10.) Both Petitioner and the government appealed the appellate court's rulings. (*See* Lodgm't Nos. 12 & 13.) The California Supreme Court denied Petitioner's petition, but granted the government's petition for review. (*See* Lodgm't No. 14.)

In the interim between the state supreme court's grant of the government's petition for review and its ruling on the petition, the state supreme court decided *People v. Black*, 113 P.3d 534, 543-44 (Cal. 2005), *vacated*, *Black v. California*, 127 S. Ct. 1210 (2007).  In *Black*, the California Supreme Court  attempted to salvage California's sentencing scheme by finding that the "statutory maximum" for *Apprendi* purposes was the entire range of terms, from lower through upper, and that because the factors used to impose upper terms were subject to a reasonableness requirement, they were the functional equivalent of the advisory provisions of the federal guidelines.  *Id*.  Subsequent to its ruling in *Black*, the state supreme court ordered the appellate court to vacate its previous determination that Petitioner's sentence violated *Blakely* and to reconsider the issue.  (*See* Lodgm't No. 15.)  This was the state of the law at the time Petitioner sought relief in the state appellate and supreme courts, and at the time his conviction became final.

Citing *Black*, upon rehearing the appellate court determined that the trial court had not violated Petitioner's Sixth Amendment rights by imposing an upper-term sentence based on its finding of aggravating factors.  (Lodgm't No. 17 at 9.)  The appellate court rejected Petitioner's *Blakely* claim on the basis that the California Supreme Court had determined in *Black* that California's sentencing scheme did not violate the Sixth Amendment.  (*Id*. at 8-9.)

**C.     The United States Supreme Court's Decision in *Cunningham v. California***

In *Cunningham v. California*, 127 S. Ct. 856 (2007), the Supreme Court, citing *Apprendi* and *Blakely*, rejected the California Supreme Court's ruling in *People v. Black* and held that California's determinate sentencing law ("DSL") violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than a jury.  The Court held that because California Penal Code section 1170(b) and the implementing California Rules of Court allow for imposing an upper term when a judge finds a fact by a preponderance of the evidence, the jury trial and reasonable doubt requirements of due process were missing in California's determinate sentencing scheme.  *Cunningham*, 127 S. Ct. at 868.  The United States Supreme Court vacated *Black* and remanded for reconsideration in light

of *Cunningham*. *Black v. California*, 127 S. Ct. 1210 (2007). Upon remand, the California Supreme Court reconsidered *Black* and held that:

> [S]o long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury. "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments."

*People v. Black*, 41 Cal. 4th 799, 813 (2007) ("*Black II*") (quoting *Harris v. United States*, 536 U.S. 545, 558 (2002)).

### D.    Analysis of Petitioner's *Blakely* claim

California law provides that a defendant's history of numerous or increasingly serious prior convictions is an aggravating factor which can support the imposition of an upper term. Cal. R. Ct. 4.421(b)(2). Had the trial judge here imposed the upper term based solely on the fact that Petitioner had suffered the prior convictions Petitioner admitted, the Sixth Amendment would not be implicated due to the *Apprendi* exception. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). However, the trial judge also relied on several other factors in imposing the upper term, including (1) the degree of callousness evidenced by Petitioner's use of the shotgun during the robbery to intimidate his victim; (2) the substantial planning evidenced by the pre-loaded shotgun and the stolen getaway vehicle; (3) Petitioner's prior criminal history, including prior prison terms; and (4) the fact that the crime was committed while Petitioner was serving a term of federal supervised release. (Lodgm't No. 2 at 905-07.) As stated below, the Court **FINDS** that the Supreme Court's decision in Cunningham does not apply to Petitioner's claim, and that Petitioner's claim is therefore exhausted. Further, the Court **FINDS** that Petitioner's upper-term sentence does not violate clearly established federal law because it was imposed on the basis of prior convictions.

//
//
//

### 1. Whether the Supreme Court's Decision in *Cunningham* Applies to the Instant Petition

The Court must first determine what law governs the instant Petition. The Court notes that the Supreme Court's decision in *Cunningham* was rendered more than nine months after Petitioner's conviction was finalized. Respondent contends that *Teague v. Lane*, 489 U.S. 288 (1989), prevents Petitioner from taking advantage on collateral review of the new rule of constitutional law announced by the Supreme Court in *Cunningham*.

In *Teague*, the Supreme Court held that a new procedural (as opposed to substantive) rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence. *See id* at 311. There are two exceptions to non-retroactivity of new procedural rules: (1) "rules forbidding punishment of certain primary conduct or rules prohibiting a certain category of punishment for a class of defendants because of their status or offense"; and (2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard v. Banks*, 542 U.S. 406, 416-17 (2004).

The Court **FINDS** that *Teague* bars the application of *Cunningham* to Petitioner's case. Although the Ninth Circuit has not yet ruled on the retroactivity of *Cunningham*, Ninth Circuit precedent indicates that the case should not apply retroactively on federal collateral review. The Ninth Circuit has held that the United States Supreme Court's decision in *Blakely* did not announce a watershed rule of criminal procedure. *See Schardt v. Payne*, 414 F.3d 1025, 1036 (9th Cir. 2005). The Ninth Circuit found that *Blakely* did not announce a watershed procedural rule because "the Supreme Court has previously determined that a change in the law requiring that juries, rather than judges, make the factual findings on which a sentence is based did not announce a watershed rule of criminal procedure." *Id.* (citing *Schriro v. Summerlin*, 542 U.S. 348 (2004)). Accordingly, the Ninth Circuit found that *Blakely* did not satisfy the requirements of *Teague*, and the case therefore did not apply retroactively to convictions that became final prior to its publication. *Id. Cunningham* applied the new procedural rule announced in *Blakely* to California's determinate sentencing law. *See Cunningham*, 127 S. Ct. at 856. Given

*Cunningham*'s reliance on *Blakely*, and given the fact that *Blakely* does not apply retroactively, the Court **FINDS** that *Cunningham* also does not apply retroactively.

This determination is consistent with the recent holding in *Ayala v. Ayers*, in which the Chief Judge of this District determined that "the *Cunningham* decision announced a new rule of criminal procedure, one which is not a 'watershed' rule, and thus cannot be applied retroactively to Petitioner's conviction." *See* No. 01-1322, 2007 U.S. Dist. LEXIS 49339, at *14-15 (S.D. Cal. July 9, 2007) (Gonzalez, J.). Other courts in this District concur. *See e.g.*, *Fuson v. Tilton*, No. 06-424, 2007 U.S. Dist. LEXIS 66977, *47-48 (S.D. Cal. Sept. 10, 2007) ("Since *Cunningham* is similar to, and relied heavily on, *Blakely*, *Cunningham* similarly did not announce a watershed rule. . . . Therefore, the Court concludes that, pursuant to the *Teague* test, *Cunningham* does not apply retroactively."); *Rosales v. Horel,* No. 06-2327, 2007 U.S. Dist. LEXIS 46551, at *6 (S.D. Cal. June 26, 2007) ("[B]ecause *Cunningham* relied heavily on the new procedural rule announced in *Blakely*, and because the Ninth Circuit has already decided that *Blakely* is not retroactive, then *Cunningham* is also not retroactive." (citations omitted)).

Petitioner's conviction became final on April 18, 2006, ninety days after the California Supreme Court denied Petitioner's final petition for review. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Because Petitioner's conviction became final before *Cunningham* was decided on January 22, 2007, *Cunningham* is not applicable to Petitioner's sentence.

Respondent urges that to the extent that *Cunningham* applies to Petitioner's Petition, the Petition is unexhausted because the California state courts have not had an opportunity to apply *Cunningham* to this case. (Answer at 9.) However, as stated above, *Teague* bars the application of *Cunningham* to Petitioner's case. Further, Petitioner has exhausted the due process and *Blakely* claims in the instant Petition by presenting them to the state courts. (*See* Lodgm't Nos. 7, 9, 12, 18.) Accordingly, Respondent's exhaustion argument is without merit.

    **2. Whether Imposition of the Upper-Term Sentence Violated Clearly Established Federal Law**

The Court now examines the merits of Petitioner's *Blakely* claim that the trial court erred in imposing a sentence beyond the statutory maximum based on facts not found by a jury. For

purposes of a *Blakely* analysis, the relevant statutory maximum "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-304. In accord with *Blakely*, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum. *Cunningham*, 127 S. Ct. at 868 (citing *Blakely*, 542 U.S. at 303).

Under California law, only one aggravating factor need be found to enhance a middle term sentence to the upper term. *See, e.g.*, *People v. Osband*, 919 P.2d 640, 709 (Cal. 1996). In Petitioner's case, the trial court relied upon multiple aggravating factors, including Petitioner's prior convictions, when sentencing Petitioner to the upper term. (Lodgm't No. 2 at 906-07.) The Supreme Court held in *Apprendi* that prior convictions are explicitly excepted from the requirement that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. 530 U.S. at 476-77, 490. Based on *Apprendi*, the Court **FINDS** that the state court's decision to uphold Petitioner's upper-term sentence was reasonable because the sentence was based on Petitioner's prior felony conviction. Petitioner's prior conviction alone exposed him to the sentencing range's upper term. *See id.* Although the trial judge also found several other aggravating factors, Petitioner's admitted prior conviction was sufficient to expose him to the upper term. *See Blakely*, 542 U.S. at 303-04. In other words, even without any additional jury findings, Petitioner's prior conviction permissibly expanded the sentencing range to include an upper-term sentence.

Because Petitioner has not shown that adjudication of his second claim in the state court proceedings was contrary to or involved an unreasonable application of clearly established federal law as it existed prior to the date upon which his conviction became final, or that it was based on an unreasonable determination of the facts, the Court **DENIES** Petitioner's second claim.

//
//
//
//

*Conclusion*

For the reasons stated above, the Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus.

**IT IS SO ORDERED.**

DATED: September 14, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties
　　Magistrate Judge Stormes